Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| ABNER ORTIZ CABRERA<br>Recurrido<br><br>v.<br><br><br>ÁNGELO DÍAZ GONZÁLEZ<br>Peticionario<br><br><br><br>BLANCA I. RIVERA CRUZ<br>Co-Demandada | KLCE202400828 | *Certiorari*<br>procedente del<br>Tribunal de<br>Primera Instancia,<br>Sala de Bayamón<br><br><br>Caso Núm.<br>GB2022CV00947<br><br><br>Sobre:<br>Incumplimiento<br>de Contrato;<br>Cobro de Dinero;<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 22 de noviembre de 2024.

El señor Ángelo Díaz González (señor Díaz González o peticionario), acude ante nosotros mediante recurso de *certiorari*, solicitando la revocación de una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, (TPI), el 7 de junio de 2024. Mediante dicho dictamen el foro primario declaró No Ha Lugar una *Moción solicitando desestimación por prescripción* instada por el señor Díaz González, al razonar que se trataba de una causa de acción por daños contractuales, cuyo término prescriptivo se extiende por quince años.

Contrario a lo interpretado por el TPI, el peticionario sostiene que la causa de acción instada en su contra es una extracontractual, en tanto se reclama por sus ejecutorias como profesional, y no aparece como parte suscribiente en el contrato que se aludió en la *Demanda* presentada.

NÚMERO IDENTIFICADOR

SEN2024_____

Juzgamos que el peticionario tiene razón al solicitar la desestimación de la *Demanda* presentada en su contra, pues las alegaciones dirigidas contra él describen una acción en daños y perjuicios por impericia profesional, de naturaleza extracontractual, cuyo término prescriptivo transcurrió.

## I. Resumen del tracto procesal

Limitándonos a plasmar los datos procesales pertinentes a la controversia ante nuestra consideración, el Sr. Abner Ortiz Cabrera (señor Ortiz Cabrera o recurrido), instó una *Demanda* sobre *incumplimiento contractual, cobro de dinero y daños y perjuicios*, el **11 de octubre de 2022**. La causa de acción fue dirigida en contra del señor Díaz González (aquí peticionario), y la Sra. Blanca I. Rivera Cruz, como agentes de seguros e inversiones.

Con relación al señor Díaz González en particular, en la *Demanda* el señor Ortiz Cabrera alegó, en síntesis, lo siguiente: que el primero lo orientó y convenció de invertir sus ahorros en un tipo de esquema que involucraba la compra de seguros de vida, con la promesa de generar grandes ganancias en el término de dos (2) años; que, de conformidad a esto, el 9 de octubre de **2007** invirtió cincuenta mil dólares, mediante entrega de cheque a nombre de Red Rock Investors, LLC, para la compra de una póliza de seguro de vida de un tal Yoshie Hockl, a través de la corporación creada a esos efectos, llamada Yoshie Hockl IV, LLC; que, a cambio de dicha inversión recibiría en el término de dos años, el reembolso de lo invertido, más 17,290.00, al treinta por ciento de interés.

Continuó alegando el señor Ortiz Cabrera que, faltando dos semanas para el vencimiento del término para recibir el reembolso de lo invertido, recibió varias comunicaciones del peticionario, informando que había problemas con la póliza y no aparecía el dinero. Añadió que, a pesar de sus reclamos hacia el peticionario para que se cumpliera lo acordado, este nunca le proveyó una explicación clara y dejó de contestar sus llamadas.

Por lo anterior, el 25 de agosto de **2017**, el señor Ortiz Cabrera instó una querella ante la Oficina del Comisionado de Seguros (OCS). Sin embargo, el 10 de enero de **2020**, la OCS desestimó dicha querella.

Ante ello, el **11 de octubre de 2022**, el recurrido presentó la *Demanda* bajo discusión, alegando que el peticionario lo engañó, al inducirlo a invertir sus ahorros en un negocio turbio, ilegal y desprestigiado, a través de una compañía, B&B Equity Group LLC, que fue exitosamente demandada en el foro federal por los mismos hechos. Tal actuación del peticionario fue descrita como dolosa, irresponsable, y con total indiferencia al daño causado. Adujo que, de acuerdo con el contrato firmado, el señor Ortiz Cabrera debió haber recibido la cantidad pactada, por lo que su incumplimiento contractual le causó daños.

En respuesta el señor Díaz González presentó *Contestación a Demanda,* aceptando ciertas alegaciones y negando otras, además de alzar defensas afirmativas. Desde esta primera comparecencia el peticionario esgrimió que fungió como intermediario financiero para el señor Ortiz Cabrera, sin faltar a los deberes éticos que dicta la profesión de productor de seguros. Además, incluyó como defensa afirmativa la prescripción de la causa de acción.

Posteriormente, el peticionario instó *Moción solicitando desestimación por prescripción.* En lo que nos atañe, en esta *Moción* se adujo que: la *Demanda* presentada era sobre alegada mala práctica profesional, al no advertir el peticionario al señor Ortiz Cabrera sobre los peligros de la inversión realizada; que la querella instada por el recurrido ante la OCS data de agosto de 2017, y fue desestimada el 10 de enero de 2020, por lo que desde esa misma fecha se conocía del alegado daño, pero la *Demanda* se presentó el 11 de octubre de 2022, ya pasado el término prescriptivo de un (1) año. Junto a esta *Moción* el peticionario incluyó varios documentos relacionados al negocio jurídico conducido, incluyendo un contrato suscrito por el recurrido.

A raíz de ello, el señor Ortiz Cabrera presentó *Oposición a moción solicitando desestimación por prescripción*. Esgrimió que en la moción dispositiva presentada por el peticionario no fueron discutidos los elementos de la Regla 10.2 de Procedimiento Civil, *infra*. Arguyó, además, que, aunque la *Demanda* contiene hechos constitutivos de impericia profesional o malicia, y que la reclamación es principalmente sobre incumplimiento de contrato, cuyo término prescriptivo es de quince (15) años.

Es así como, luego de examinar los escritos de las partes acerca de la *Moción de desestimación* presentada, el TPI emitió *Resolución* declarando *No Ha Lugar* la solicitud de desestimación instada por el peticionario. Como fundamento para denegar la moción dispositiva ante su atención el foro primario razonó que, luego de examinar las alegaciones contenidas en la *Demanda*, la causa de acción era una por incumplimiento de contrato, por lo que el término prescriptivo aplicable era el de quince (15) años, no el de un año correspondiente a las causas de acción por daños extracontractuales.

Insatisfecho, el peticionario instó una *Moción de reconsideración* ante el mismo tribunal *a quo*. En lo sustantivo, el peticionario adujo que: (1) no existía contrato alguno firmado entre las partes; (2) se trataba de una causa de acción por impericia profesional, y en reconocimiento de esto el demandante-recurrido instó una querella ante la OCS; (3) tomando como punto de partida la fecha en que la OCS desestimó dicha querella, momento en que el recurrido sabía del alegado daño, la causa de acción se encontraba prescrita al momento en que se presentó la *Demanda*.

El 26 de junio de 2024, el TPI declaró *No Ha Lugar* la *Moción de reconsideración*. En consecuencia, el 29 de julio de 2024, el señor Díaz González acudió ante nosotros, mediante recurso de *certiorari*, señalando un solo error:

*Erró el TPI al no desestimar la demanda incoada por estar prescrita.*

A causa de lo cual, el señor Ortiz Cabrera también compareció, mediante *Oposición a recurso de certiorari*.

## II. Exposición de Derecho

a.

La Regla 6.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 6.1, establece que, para solicitar un remedio en un foro judicial, las alegaciones hechas en la demanda deben contener: "(1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza". Por su parte, la Regla 6.5 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 6.5, aclara que dichas alegaciones no deben seguir fórmulas técnicas particulares, siendo requisito únicamente que estas se redacten de manera "sencilla, concisa y directa", además, se interpretarán *con el propósito de hacer justicia.* Véase también, *Torres Torres v. Torres Serrano,* 179 DPR 481, 501 (2010).

En sintonía con lo anterior, nuestro Tribunal Supremo ha expresado que las alegaciones solo tienen una misión: notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes. *Banco Central v. Capitol Center,* 135 DPR 760 (1994). La función de las alegaciones es simplemente bosquejar la controversia, por lo que, al momento del emplazamiento, a través de la demanda solo es necesario comunicarle al demandado la naturaleza general de las alegaciones del demandante. *Íd.*

De igual forma, nuestro más alto foro ha resuelto que en la demanda no hay que especificar bajo qué disposición legal se reclama, basta con que de los hechos que esquemáticamente se alegan surja una causa de acción bajo cualquier ley. *Dorante v. Wrangler of PR,* 145 DPR 408, 414 (1998). Después de todo, los tribunales conceden lo que en derecho

procede no lo que se les pide, independientemente de que el remedio hubiese sido específicamente solicitado en la súplica o en las alegaciones. Citando a *Rivera Flores v. Cía. ABC*, 138 DPR 1, 8 (1995); *Neca Mortg. Corp v. A&W Sev. S.E.*, 137 DPR 860 (1995).

A lo anterior se ha de añadir lo que dispone la Regla 8.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 8.3, en lo relativo a que *una copia de cualquier documento o escrito que se acompañe como exhibit a una alegación se considerará para todos los efectos como parte de esta*. Sobre tal regla nuestra alta curia manifestó que *autoriza la presentación de anejos con la demanda. **En ocasiones ello es conveniente porque abunda en los hechos de la acción y puede ayudar a clarificar o detallar los mismos***. *Pero se trata de algo* potestativo*; no es mandatorio*. (Énfasis provisto). *Bco. Central Corp., v. Capitol Plaza, Inc.*, 135 DPR 760 (1994).[1]

b.

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula el demandado para solicitar que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Esta Regla permite a un demandado solicitar al tribunal que desestime la demanda antes de contestarla *cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará. Inmobiliaria Baleares v. Bernabe González*, 2024 TSPR 112; *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043 (2020). Tal solicitud deberá hacerse a través de una moción y basarse en uno de los fundamentos siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **dejar de exponer una reclamación que justifique**

---

[1] Aunque la Opinión citada precede la aprobación de las Reglas de Procedimiento Civil de 2009, la regla aludida no sufrió cambios con las enmiendas incorporadas, de modo que subsiste la interpretación que de esta hiciera nuestro Tribunal Supremo.

**la concesión de un remedio**; y (6) dejar de acumular una parte indispensable. (Énfasis provisto). 32 LPRA Ap. V, R. 10.2; *Costas Elena v. Magic Sport Culinary Corp.*, 2024 TSPR 13; *López García v. López García,* 200 DPR 50, 69 (2018); *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213*,* 234*; Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 935 (2011).

Al evaluar una petición presentada al amparo de la Regla 10.2, *supra,* el foro primario tiene que tomar como ciertos todos los hechos bien alegados en la demanda, y considerarlos de la manera más favorable a la parte demandante. *Bonnelly Sagrado v. United Surety & Indemity Company*, 207 DPR 715, 722 (2021); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013). Así, para que una moción de desestimación pueda prosperar, se tiene que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 396 (2022); *López García v. López García*, supra, pág. 70*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, 193 DPR 38, 49 (2015). El tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, la demanda solo tiene que contener una relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tiene derecho a un remedio. *Torres, Torres v. Torres et al.*, 179 DPR 481, 502 (2010).

Ahora bien, ello solo aplicará a aquellos hechos alegados de forma clara y concluyente, que de su faz no den margen a dudas. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, supra. A tenor, no se presumen ciertos hechos que no estén bien alegados, ni las alegaciones o conclusiones de derecho. *Molina v. Supermercado Amigo, Inc.*, 119 DPR 330, 338 (1987). El TPI debe

determinar si, a base de los hechos que aceptó como ciertos, *la demanda establece una reclamación plausible que justifique la concesión de un remedio. Costas Elena v. Magic Sport Culinary Corp.,* supra, citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307. Las conclusiones de derecho o las deducciones injustificadas de los hechos no se tienen nunca por admitidas. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publicaciones JTS, 2011, T. II, pág. 533. De esta manera una demanda puede ser desestimada si claramente carece de méritos, y esto puede consistir en la no existencia de una ley que sostenga una reclamación, en la ausencia de hechos suficientes para que la reclamación sea válida, o en la alegación de algún hecho que necesariamente destruya la reclamación. *Reyes v. Sucn. Sánchez Soto*, 98 DPR 302, 308 (1970). En este sentido, si bien basta que la relación de hechos sea *sucinta y sencilla*, las alegaciones deben recoger hechos demostrativos que permitan inferir que la parte peticionaria tiene derecho a un remedio. Por tal razón, se requiere "que en las alegaciones se aporte una relación de hechos, con el propósito de que las partes y el tribunal puedan apreciar con mayor certeza los eventos medulares de la controversia".[2]

Seguido, la Regla 10.2(5) de Procedimiento Civil, supra, dispone que si en una solicitud de desestimación *en la cual se formula la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio, se exponen **materias no contenidas en la alegación impugnada**, y el tribunal no las excluye, la moción debe considerarse como una moción de sentencia sumaria.* (Énfasis provisto). Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R.10.2; *Sánchez v. Aut. De Los Puertos*, 153 DPR 559, 570 (2001). En tal sentido, la moción estará sujeta a todos los trámites ulteriores provistos en la Regla 36 de Procedimiento Civil. *Íd.*

---

[2] Véase Informe de las Reglas de Procedimiento Civil, Comité Asesor Permanente de las Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial, 2008, pág. 70.

La conversión de una moción de desestimación a una de sentencia sumaria, a tenor con la regla citada, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. *Torres Capeles v. Rivera Alejandro*, 143 DPR 300 (1997).

c.

La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho de ejercer determinada causa de acción. *Haedo Castro v. Roldan Morales*, 203 DPR 324, 336 (2019). Sobre el particular, el Artículo 1861 del Código Civil de Puerto Rico, 31 LPRA sec. ant. 5291 establece que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley".[3] Así, una vez se agota un término prescriptivo se extingue el derecho a ejercer la causa de acción y la persona sujeta a responder queda exonerada. *Maldonado v. Rivera v. Suárez y otros*, 195 DPR 182, 193 (2016).  En ese sentido, la prescripción extintiva es una forma de extinguir las obligaciones. *SLG García-Villega v. ELA et al.*, 190 DPR 799, 814 (2014).  La eficacia de esta figura jurídica es automática y se produce *ipso iure* con el transcurso del tiempo fijado por ley, a menos que se realicen los actos interruptores dispuestos en el Código Civil. *Santos de García v. Banco Popular*, 172 DPR 759, 766 (2007).

La prescripción extintiva tiene el propósito de castigar la dejadez en el ejercicio de los derechos y evitar la incertidumbre en las relaciones jurídicas. *SLG García-Villega v. ELA et al., supra*, pág. 813. Así, "[a]l no ejercicio se le otorga un valor de carácter objetivo, 'de manera que es independiente de cualquier voluntad que existiera en el titular del derecho, el cual no puede dejar sin efecto la prescripción ni oponerse a ella demostrando la inexistencia de una voluntad contrario'". *Santos de García*

---

[3] El Código Civil de 1930 fue derogado por la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020. Sin embargo, para propósitos de la disposición de este recurso estaremos citando el Código Civil derogado, pues los hechos ocurrieron durante la vigencia del Código Civil del 1930.

*v. Banco Popular*, supra, pág. 767 citando a L. Díez-Picazo y Ponce de León, *La prescripción extintiva en el Código Civil y en la jurisprudencia del Tribunal Supremo*, Madrid, Thomson Civitas, 2003, pág. 127. En otras palabras, "la prescripción es independiente de la voluntad o de los motivos que el titular pudiera tener para su inacción". *Íd.* Además, es independiente de la existencia de errores o de impedimentos de carácter puramente fáctico. *Íd.*

El Código Civil de Puerto Rico de 1930, distinguía entre los daños derivados del incumplimiento de contrato, a saber, el Art. 1054 del Código Civil, 31 LPRA sec. ant. 3018, de los daños derivados de la culpa extracontractual, Art. 1802 del Código Civil, 31 LPRA sec. ant. 5141. En ambas causas de acción, la "indemnización de daños exige una conducta antijurídica causante de los daños, bien por infringir lo acordado en contrato o bien por infringir el principio general de no causar daño a nadie. *Ramos Lozada v. Orientalist Rattan Furniture, Inc.*, 130 DPR 712, 722 (1992). Sin embargo, el deber de indemnizar es distinto en ambos tipos de reclamaciones. Así pues, **procede la acción en daños contractuales al amparo del Art. 1054 del Código Civil,** *supra*, **cuando el daño sufrido exclusivamente surge como consecuencia del incumplimiento de una obligación específicamente pactada, daño que no ocurriría sin la existencia del contrato**. En cambio, resulta procedente una reclamación de daños extracontractuales como resultado del quebrantamiento de un contrato, si el hecho causante del daño constituye una violación del deber general de no causar daño a otro, y, a la vez, incumplimiento contractual. (Énfasis provisto). *Ramos Lozada v. Orientalist Rattan Furniture, Inc.*, supra, pág. 727.

Ahora bien, una de las distinciones más notables entre las acciones derivadas de la responsabilidad contractual y la extracontractual estriba en el término prescriptivo que emana de cada una. Esto se agudiza aún más cuando está en juego la vitalidad de la causa de acción por cuestión

de la diferencia sustancial entre los términos prescriptivos para las acciones contractuales y las extracontractuales. Arts. 1864 y 1868 del Código Civil de Puerto Rico, 31 LPRA secs. ants. 5294 y 5298, respectivamente. Ello pues, el Art. 1864 del Código Civil, *supra*, dispone que la acción por incumplimiento contractual prescribe a los 15 años, mientras que el Art. 1864 del Código Civil, *supra*, dispone que la acción por responsabilidad extracontractual prescribe al año. *Martínez Marrero v. González Droz*, 180 DPR 579, 592 (2011).

En lo pertinente al asunto ante nos, las acciones por impericia profesional son las que nacen cuando una persona desempeña su oficio, profesión u ocupación sin la debida prudencia o diligencia, o sin poseer la habilidad requerida. *Colón Gorbea v. Sánchez Hernández et al.*, (Sentencia), 202 DPR 760, 768 (2019). Reiteradamente, el Tribunal Supremo ha resuelto que **las acciones en daños y perjuicios por impericia profesional son de naturaleza extracontractual**. (Énfasis provisto). *Inmobiliaria Baleares, LLC. v. Benabe González*, supra; *Colón Gorbea v. Sánchez Hernández et al.*, supra*; Martínez Marrero v. González Droz*, 180 DPR 578 (2011). *Independientemente de la existencia de un contrato entre las partes, por décadas este Tribunal* (Tribunal Supremo) *ha resuelto que las acciones en daños y perjuicios por impericia profesional son de naturaleza extracontractual*, a las que le aplica el término prescriptivo de un año dispuesto en el Artículo 1868 del Código Civil de 1930, 31 LPRA sec. 5298. *Colón Gorbea v. Sánchez Hernández et al., supra.* A lo cual se debe añadir que las acciones por impericia profesional son las que nacen cuando una persona desempeña su oficio, profesión u ocupación sin la debida prudencia, diligencia o sin poseer la habilidad requerida. *Rodríguez Ruiz v. Hosp. San Jorge*, 169 DPR 859 (2007).

A tenor, se ha desarrollado la teoría cognoscitiva del daño, la cual establece que los términos para incoar una causa de acción comienzan a transcurrir una vez el perjudicado conoció o debió conocer el daño, quién

fue el autor y, además, desde que éste conoce los elementos necesarios para ejercitar efectivamente su causa de acción. *Maldonado v. Rivera v. Suárez y otros*, supra, pág. 194.

d.

El Artículo 9.020 del Código de Seguros, 26 LPRA sec. 949a, define "*productor*" como "la persona que con arreglo a este Código ostenta una licencia debidamente emitida por el Comisionado para gestionar seguros en Puerto Rico […]". Por otro lado, el Artículo 9.022 del Código de Seguros, 26 LPRA sec. 949c, establece la responsabilidad del productor hacia el asegurado. El precitado Artículo dispone lo siguiente:

> El productor deberá cumplir, entre otros, con los siguientes deberes:
>
> (1) Proveer al consumidor una orientación clara y completa sobre la cubierta, beneficios, límites, y exclusiones de la póliza de seguros gestionada por su conducto; así como de los deberes y obligaciones de este como asegurado bajo la misma.
>
> (2) Gestionar el producto de seguros que se ajuste a la necesidad de cubierta que procura el consumidor.
>
> (3) Identificar y medir la posible exposición de pérdida.
>
> (4) Cumplir con los deberes impuestos de conformidad con otras disposiciones de ese Código y con los principios de conducta que el Comisionado establezca mediante regla o reglamento.
>
> Cuando el productor actúe en calidad de representante autorizado del asegurador deberá cumplir, además, con aquellos otros deberes que le imponga el asegurador por virtud del contrato suscrito entre las partes.

## III. Aplicación del Derecho a los hechos

La controversia que nos ha tocado dilucidar está bien definida, refiere a considerar si de las alegaciones de la *Demanda* instada por el señor Ortiz Cabrera en contra del señor Díaz González surge un incumplimiento contractual, o si, por el contrario, de estas solo dimana un reclamo por negligencia profesional, lo que constituye una reclamación extracontractual. Como explicamos al exponer el derecho pertinente, la conclusión sobre si estamos ante una reclamación contractual o

extracontractual determina el término prescriptivo aplicable, siendo el del primer caso de quince (15) años, y el del segundo de un (1) año.

Con mayor especificidad, mientras el peticionario aduce que las alegaciones en su contra aluden a sus funciones como intermediario financiero en el negocio efectuado entre el recurrido y la empresa con quien este último contrató, el señor Ortiz Cabrera sostiene que los hechos alegados en la *Demanda* conforman una reclamación principalmente de incumplimiento contractual, aunque también contengan elementos de impericia profesional. Veamos tales alegaciones.

En la segunda alegación de la *Demanda*[4] se identificó al señor Díaz González como agente de seguros e inversiones debidamente licenciado. Luego, en las alegaciones (5), (9), (15), (16), (17), (18), (20), (21-23) se dice, en síntesis, que el señor Ortiz Cabrera fue orientado y convencido por el peticionario mediante engaño para invertir sus ahorros en un esquema que involucra la compra de pólizas de seguros de vida, con la promesa de generar grandes cantidades de dinero. En la misma tónica, se imputó que el peticionario llevó a cabo tal engaño a sabiendas de que el dinero del recurrido sería utilizado en un esquema ilegal, o que debió saber sobre ello, fallando en llevar a cabo la investigación y corroboración necesaria para evitar poner en riesgo la inversión del señor Ortiz Cabrera. Conforme a dicha orientación, el señor Ortiz Cabrera llevó a cabo una inversión, de cincuenta mil dólares, que, al cabo de dos (2) años se le reembolsaría el total, más $17,290.00 al 30% de interés, pero esto nunca de materializó.

Entonces, es en los incisos (24) y (25) que por primera vez se hizo mención a un contrato en la *Demanda*, indicándose lo que sigue:

> 24. De acuerdo al contrato firmado, el Demandante debió haber recibido los $50,000.00 originalmente invertidos, y la cantidad de $17,290.00 al 9 de octubre de 2009, más el 34% del valor o ganancia generada por la corporación creada para la inversión en la póliza de Yoshie Hockl IV, lo cual se había calculado sumaría Setenta Mil Dólares ($70,000.00)

---

[4] Copia de las alegaciones de la *Demanda* bajo discusión se encuentra en el apéndice del recurso de *certiorari*, págs. 22-25.

aproximadamente. Dicha cantidad está vencida, es líquida y exigible.

25. Debido a que el contrato fue incumplido, y aun no se le ha pagado el dinero prometido al Demandante, los intereses continúan acumulándose al día de hoy, y continuarán acumulándose hasta su saldo total.

Según queda visto, en las alegaciones citadas **no** se afirma que el señor Ortiz Cabrera hubiese suscrito un contrato con el peticionario, mucho menos se describen las obligaciones que tales partes hubiesen asumido en un presunto contrato. Es decir, las alegaciones solo describen la conducta del peticionario en su función como asesor financiero, en términos de hacerle responsable por la no consecución de las expectativas que tenía el señor Ortiz Cabrera respecto a la inversión que hizo, aunque el primero no fuera el recipiente de la inversión sino solo un mediador.

A lo anterior se debe añadir que, como mencionamos en el tracto procesal, en la *Moción de desestimación* presentada por el peticionario ante el TPI, este incluyó copia de un contrato que aparece suscrito por el señor Ortiz Cabrera,[5] donde no hay mención alguna del primero.[6] El referido contrato da cuentas del dinero depositado por el señor Ortiz Cabrera, cincuenta mil dólares, en el que presuntamente intervino un *agente fiduciario*, Red Rock Investors LLC, según designado por Eagle Investment Corporation, (sin firma ni iniciales de ninguna de estas compañías), **en el que no se hizo mención alguna del peticionario como parte contratante**. Nos llama la atención el hecho de que, a pesar del peticionario haber incluido el referido contrato en la moción dispositiva presentada, en la *Oposición a moción solicitando desestimación* presentada por el recurrido no se hiciera mención alguna al referido contrato para impugnar el argumento de que el señor Díaz González no fue parte contratante en el mismo sino un mediador.

---

[5] Anejo 11 del recurso de *certiorari*, págs. 47-57.

[6] Aunque no fue objeto de discusión en ninguno de los escritos presentados por las partes ante nosotros, valga mencionar que la inclusión de dicho contrato en la petición de desestimación no convirtió tal moción en una solicitud de sentencia sumaria, por cuanto aludió a una materia contenida en la alegación impugnada, el contrato suscrito por el recurrido, alegaciones 24 y 25 de la *Demanda*. Ver, *Sánchez v. Aut. De Los Puertos*, supra.

A lo anterior cabe añadir que en la *Oposición a recurso de certiorari* presentada por el recurrido ante nuestra consideración tampoco se precisó dónde en las alegaciones contenidas en la *Demanda* surge la presunta relación contractual con el peticionario que justifique aplicar en este caso el periodo prescriptivo contractual de quince años, en lugar del término prescriptivo de un año que gobierna las reclamaciones extracontractuales. Contrario a lo argüido por el recurrido, en las alegaciones dirigidas contra el peticionario incluidas en la *Demanda* lo que se describió fue conducta que ubica dentro de una presunta impericia profesional, al no ofrecerse la debida orientación sobre la inversión realizada. Como explicamos en la exposición de derecho, aunque hubiese intervenido un contrato de servicios profesionales entre el peticionario y el recurrido, ello no tornaba la causa de acción por impericia profesional en un reclamo contractual cuyo término prescriptivo fuera el de quince (15) años, sino que nuestro Tribunal Supremo ha zanjado que aplicaría el término prescriptivo más corto, de un año, relativo a la responsabilidad extracontractual. Es de ver que, hace apenas unos días, nuestro Tribunal Supremo reiteró que las acciones de daños por impericia profesional son de índole extracontractual. *Inmobiliaria Baleares, LLC v. Benabe González*, 2024 TSPR 112.

Claro, tampoco pasa desapercibida la dejadez mostrada por el señor Ortiz Cabrera durante el término transcurrido antes de que presentara la *Demanda*. Según la alegación número veinte (20) incluida en la *Demanda*,[7] el recurrido tenía expectativa de que se le pagara por su inversión a partir de, al menos, **el 9 de octubre de 2009**, fecha en que vencía el término acordado para tal propósito. Sin embargo, a pesar de que, según sus alegaciones, se sintió atemorizado de no recibir lo invertido dentro de dicho término, y tampoco encontrar respuesta por parte del peticionario a su reclamo, **no fue sino hasta pasados casi ocho años de la fecha**

---

[7] Anejo 5 del recurso de *certiorari*, pág. 24.

**señalada**, que el 25 de agosto de 2017, decidió instar una querella ante la OCS. A la tardanza descrita se añade que, una vez la OCS emitió determinación sobre la referida querella, el 10 de enero de 2020, el recurrido se decidió finalmente por instar la *Demanda* el 11 de octubre de 2022, habiendo pasado más de dos años desde la acción de la OCS.

En definitiva, aun interpretando las alegaciones contenidas en la *Demanda* liberalmente en favor del recurrido, no apreciamos que contengan propiamente un reclamo contra el peticionario sobre incumplimiento contractual, sino que más bien describen una presunta negligencia de este último en sus funciones como agente o productor de seguros, en cuyo caso estamos ante una reclamación por daños extracontractuales. Entonces, bajo la teoría cognoscitiva del daño, si se le imputara conocimiento del daño al recurrido desde el 9 de octubre de 2009, fecha de vencimiento del término en que presuntamente recibiría el producto de su inversión, o desde el 10 de enero de 2020, cuando la OCS denegó su querella, lo cierto es que, en ambos casos, al momento de la presentación de la *Demanda* el 11 de octubre de 2022 ya la causa de acción estaba prescrita, al aplicársele el término de un año para reclamar la indemnización por alegados daños extracontractuales. A tenor con lo anterior, la dejadez, incuria y falta de acción afirmativa[8] no puede pasar desapercibida la demora en presentar el reclamo.

## IV. Parte dispositiva

Por los fundamentos expuestos, expedimos el recurso de *certiorari* solicitado y revocamos la *Resolución* recurrida. A tenor, ordenamos la desestimación de la *Demanda* instada en contra del señor Díaz González.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] *Consejo de Titulares v. Ramos Vázquez*, 186 DPR 311 (2012).